IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **EVERLIGHT ELECTRONICS CO., LTD.** | § § | |
| *Plaintiff,* | § § | 6:23-CV-00439-AM-DTG |
| *v.* | § § § | |
| **WALMART, INC.,** | § § | |
| *Defendant.* | § | |

**MEMORANDUM IN SUPPORT OF CLAIM CONSTRUCTION ORDER**

On May 6, 2024, the Court entered a Claim Construction Order (Dkt. 42) construing the terms of U.S. Patent No. 7,554,126 ("the '126 Patent"); U.S. Patent No. 9,905,742 ("the '742 Patent"); and U.S. Patent No. 9,640,733 ("the '733 Patent"). The Court enters this memorandum in support of that order.

**I.     LEGAL STANDARD**

    **A.     General principles**

The general rule is that claim terms are given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution.

1

*Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what is the plain-and-ordinary meaning. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not

2

generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### B. Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b) (post-AIA); 35 U.S.C. § 112, ¶ 2 (pre-AIA).[1] A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 (or § 112(b) for post-AIA patents) and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

---

[1] 35 U.S.C. § 112(b) (post-AIA) applies to the '733 and '742 Patents while 35 U.S.C. § 112, ¶ 2 (pre-AIA) applies to the '126 Patent.

## II.     CLAIM CONSTRUCTION

### A.     Term 1 – forming a first insulating layer having at least one of each an opening …

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| forming a first insulating layer having at least one of each of an opening for the n-electrode and an opening for the p-electrode so as to cover the first n-electrode and the first p-electrode<br><br>U.S. Patent No. 7,554,126, Claim 10. | No construction necessary; plain and ordinary meaning. | Indefinite. | "forming a first insulating layer having at least one of each of an opening for the n-electrode and an opening for the p-electrode, wherein the opening for the n-electrode is over the first n-electrode and the opening for the p-electrode is over the first p-electrode" |

Walmart argues this term is indefinite because an "opening" is a void that cannot "cover" something. Dkt. 25 at 5–6. According to Walmart, the openings in the insulating layer expose the electrodes and "the claim language requiring that openings 'cover' the electrodes is ambiguous and illogical." *Id.*

The Court disagrees. The '126 Patent describes the insulation layer as having openings (elements 16a and 16b in Figure 1). *See* '126 Patent at Figure 1; 10:23–29. These openings are over the n-electrode and the p-electrode. *Id.* ("[S]ince the first insulating layer 16 is an extremely thin layer, the second n-electrode 17 and the second p-electrode 18 are electrically connected to the first n-electrode 14 and the first p-electrode 15 respectively through the opening 16a for the n-electrode and the openings 16b for the p-electrode, when simply placed on the first insulating layer 16."). While the claim language may be awkward, the scope of the claim can be reasonably

ascertained when construed in light of the specification. The openings in the insulating layer are over the first electrodes (elements 14 and 15 in Figure 1) to allow the second electrodes (elements 17 and 18) to be formed on the first electrodes. Thus, the term is not indefinite.

To provide clarity, the Court construes the term to include that the openings are over the electrodes: "forming a first insulating layer having at least one of each of an opening for the n-electrode and an opening for the p-electrode, wherein the opening for the n-electrode is over the first n-electrode and the opening for the p-electrode is over the first p-electrode."

### B.     Term 2 – electrode portion cross section

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| electrode portion cross section<br><br>U.S. Patent No. 9,640,733 (the '733 Patent), Claims 1-4, 6.<br><br>U.S. Patent No. 9,905,742 (the '742 Patent), Claims 1, 2, 9, 10, 11, 15, 21. | No construction necessary; plain and ordinary meaning. | Indefinite. | Plain and ordinary meaning, where the plain and ordinary meaning of "cross section" is "a plane surface formed by cutting a solid." |

The parties agree the plain and ordinary meaning of the term "cross section" is "a plane surface formed by cutting a solid." Dkt. 25 at 8; Dkt. 31 at 13. Neither party argues that the patentee acted as his/her own lexicographer or disavowed the full scope of the claims. Accordingly, the Court adopts the parties' agreed plain and ordinary meaning of this term. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Walmart argues this term is indefinite because under the plain and ordinary meaning of "electrode portion cross-section," the scope of other claim terms that include "electrode portion

cross-section" are indefinite. That issue, however, should be resolved when construing the other terms. It does not render this term, standing alone, indefinite. As a simple example, the term "square" has a plain and ordinary meaning of a shape with four sides. If a claim term recites "a square with eight sides," the broader term may be indefinite, but the term "square" standing alone still has its plain and ordinary meaning.

Walmart also argues that this term is indefinite because the claims do not identify a specific physical portion of the electrode or identify the location of the cross section. But Walmart's arguments confuse breadth with indefiniteness. Under the plain meaning of "cross section," there are an infinite number of cross sections of the electrode portion. Thus, the claim does not identify a specific portion of the electrode or identify the location of a specific cross-section. While that makes the term broad, it does not make it indefinite.

For the above reasons, the Court adopts the parties' agreed plain and ordinary meaning of this term.

    C.      Term 3 – housing cross section

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| housing cross section<br><br>'733 Patent, Claims 1, 4-6.<br><br>'742 Patent, Claims 1, 11. | No construction necessary; plain and ordinary meaning. | Indefinite. | Plain and ordinary meaning, where the plain and ordinary meaning of "cross section" is "a plane surface formed by cutting a solid." |

As with Term 2, the parties agree on the plain and ordinary meaning of "cross section" and the Court adopts the parties' plain and ordinary meaning. Walmart makes similar arguments for this term as the "electrode portion cross section" term above. The Court rejects those arguments for the same reasons.

**D.    Term 4 – wherein the housing cross section and the electrode portion cross section are not level …**

| Terms | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| wherein the housing cross section and the electrode portion cross section are not level with one another / wherein the at least one housing cross section is not level with the electrode portion cross section<br><br>'733 Patent, Claim 1<br><br>'742 Patent, Claims 1, 11. | No construction necessary; plain and ordinary meaning. | Indefinite. | Indefinite. |

Walmart argues that this term is indefinite because "[t]he specification describes that 'the electrode portion cross section and the housing cross section *may be level with each other (i.e., form a flat surface) or may not be level with each other (i.e., do not form a flat surface).'* ['733 Patent at] 6:36-39. But, the specification does not indicate which 'surface' is 'flat' or not 'flat,' *e.g*, is it flat relative to the top? The side? The bottom?" Dkt. 25 at 15. Everlight contrasts Figures 1 and 5 of the '733 Patent to show the difference between the electrode portion cross section and the housing cross section being level and not level with each other. Dkt. 31 at 16–17.

Figures 1 and 5 establish why this claim term is indefinite. Under the plain and ordinary meaning of "electrode portion cross section" and "housing cross section," there are an infinite number of cross sections of both the electrode and housing. While the specification states the electrode portion cross section is not level with the housing cross section in Figure 5 ('733 Patent

7

at 6:48–53), the electrode and the housing overlap in Figure 5 so there are clearly cross sections that are on the same plane (level) and not on the same plane (not level). Everlight relies on the following annotated figure to show there is an electrode portion cross section (blue) that is not level (i.e., not on the same plane) with a housing cross section (red).



Dkt. 31 at 17. Figure 5, however, also shows that there are electrode cross sections that are level (i.e., on the same plane) with housing cross sections. For example, one cross section of the electrode portion is on the same plane as the annotated housing cross section in the figure.

Although there are cross sections that are and are not level in Figure 5, the patent states that the electrode portion cross section is ***not level*** with the housing cross section in Figure 5. Similarly, the specification states that the electrode portion cross section and the housing cross section are level in Figure 1. But again, there are cross sections of the electrode portion and the housing that are and are not level in Figure 1.

Thus, the patent does not apprise the public of what it means for cross sections to be level or not. *See Nautilus*, 572 U.S. at 910 ("a patent must be precise enough to afford clear notice of

what is claimed thereby apprising the public of what is still open to them.") (internal quotations and citations omitted); *see also Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291, 297 (Fed. Cir. 2021) (finding a claim term indefinite when "there are multiple methods of calculating the radii of curvature because the calculations depend on pinpointing the locations of the toe and heel. Nothing in the record indicates that an artisan would inherently know the locations of those boundaries and the patent provides no guidance.").

Everlight's annotated Figure 5 shows that the outer edge of one portion of the electrode cross section (112A2) is not level with the outer edge of the housing portion cross section. The claim, however, does not recite that the outer edges are not level, but rather that the cross-sections are not level.

Applying the plain and ordinary meaning of "cross section," the Court finds this term indefinite because it fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 910).

      **E.**      **Term 5 – wherein the central area protrudes from the two edge areas**

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| wherein the central area protrudes from the two edge areas<br><br>'733 Patent, Claim 1 | No construction necessary; plain and ordinary meaning. | Indefinite. | Plain and ordinary meaning. |

Walmart argues this term is indefinite because it does not identify the direction that the central area protrudes. Dkt. 25 at 17. The Court rejects Walmart's proposal because Walmart confuses breadth with indefiniteness. That this term is not limited to a particular direction of protrusion does not render the term indefinite.

9

The Court also rejects Walmart's argument that because the claims of the related '742 Patent were amended to overcome prior art by specifying a direction of protrusion, the scope of the claims of the '733 Patent is unclear. Dkt. 25 at 17–18. There is no logical connection between narrowing a term to avoid prior art in a different patent and the clarity of this term. And there is no clear disavowal of claim scope based on arguments during prosecution of a different patent. Having rejected Walmart's arguments, the Court finds that this term should be given its plain and ordinary meaning.

### F. Term 6 – wherein the at least one housing cross section is located in a vicinity of four corners …

| Terms | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| wherein the at least one housing cross section is located in a vicinity of four corners of the resin housing / wherein the at least one housing cross section is located in a vicinity of a comer of the resin housing<br><br>'742 Patent, Claims 1, 11. | No construction necessary; plain and ordinary meaning. | Indefinite. | Plain and ordinary meaning. |

Walmart makes two arguments to support indefiniteness. First, Walmart argues "vicinity" lacks objective boundaries. Walmart submits a conclusory declaration that because the specification does not use the term "vicinity," or a synonym of vicinity, a POSITA would not be informed of the scope of the term. Krames Decl. (Dkt. 25-5) ¶¶ 85–88. Everlight submits a competing declaration that a POSITA would understand the term with reasonable clarity.

10

Bretschneider Decl. (Dkt. 31-1) ¶¶ 111–12, 119–120. Considering the competing declarations, the Court finds that Walmart has not carried its burden to show the term is indefinite by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'Ship*, 564 U.S. 91, 95 (2011).

Second, Walmart argues that there are only four corners, and it is indefinite how a cross section can be in the vicinity of all four corners. Dkt. 25 at 20; Dkt. 35 at 11. Everlight responds that the claimed LED package is a three-dimensional object with eight corners and a POSITA would understand a housing cross section could be in the vicinity of four corners (e.g., 1, 2, 3 and 4 in the below figure). Dkt. 36 at 9–10.



The Court finds Everlight's arguments persuasive and consistent with the plain and ordinary meaning of "cross section." Therefore, this term should be given its plain and ordinary meaning.

> **G.** Term 7 – wherein the two edge areas protrude from central area in the width-wise direction

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| wherein the two edge areas protrude from central area in the width-wise direction | No construction necessary; plain and ordinary meaning. | Indefinite and/or invalid under Section 112(d). | Plain and ordinary meaning. |

| '742 Patent, Claim 7. | | | |
|---|---|---|---|

Walmart first argues that Claim 7 is invalid under 35 U.S.C. § 112(d) because the scope of Claims 6 and 7 of the '742 Patent are the same. Claim 6 recites an electrode with two edge areas and at least one edge area protrudes in a width-wise direction. Claim 7 recites that both edge areas protrude in a width-wise direction. Despite these differences in claim scope, Walmart argues that all embodiments disclosed in the specification disclose two protruding edges and therefore Claim 6 is effectively limited to two protruding edges. Dkt. 35 at 12 (citing *Retractable Techs., Inc. v. Becton Dickinson &Co.*, 653 F.3d 1296, 1304–05 (Fed. Cir. 2011)). The Court rejects Walmart's argument because it is inconsistent with the claim language and seeks to import limitations from the specification into this term to support its arguments that Claim 6 has the same scope as Claim 7. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim*, 358 F.3d at 913.

Walmart also argues the claim is indefinite because a POSITA would be unable to determine the relationship between "the two edges areas" in Claim 7 and "the at least one edge area" in Claim 6. Dkt. 25 at 21. Walmart's argument confuses the nature of the claims. Claim 1 requires a wing portion with at least one edge area. Claim 6 recites "the at least one edge area comprises two edge areas." This claim language indicates the wing portion has at least two edge areas, not that the edge area recited in Claim 1 has two edge areas. Thus, Claim 7 requires the two edge areas of the wing portion to protrude in a width-wise direction, which is sufficiently clear to inform a POSITA as to the scope of the claims, and thus the claim is not indefinite.

H. **Term 8 – wherein the electrode portion cross section extends in a thickness direction of the at least one electrode portion**

| Term | Everlight's Proposal | Walmart's Proposal | Court's Construction |
|---|---|---|---|
| wherein the electrode portion cross section extends in a thickness direction of the at least one electrode portion<br><br>'742 Patent, Claim 10. | No construction necessary; plain and ordinary meaning. | Indefinite. | Indefinite. |

Walmart argues this term is indefinite because a cross section of a structure cannot extend in a thickness direction of itself. Dkt. 25 at 23. Everlight responds that the term is not indefinite because a cross section may be a three-dimensional construction and the thickness is the direction of the cross section cut. Dkt. 36 at 13. Under the plain and ordinary meaning of cross section, however, a cross section is not three-dimensional. It is a planar surface formed by cutting a solid. As discussed above, Everlight concedes the plain and ordinary meaning of "cross section" is a plane, not a three-dimensional construct. Everlight cannot pivot to a different interpretation to argue a "cross section" has a third dimension to avoid a finding of indefiniteness. Because a POSITA would not understand a "cross section" to be three-dimensional, the Court finds this term indefinite.

**SIGNED this 25th day of June, 2024**.

_____
**DEREK T. GILLILAND**
**UNITED STATES MAGISTRATE JUDGE**